Michael S. Fox (NY State Bar No. 1853035)
mfox@olshanlaw.com
**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
Telephone: (212) 451-2300
Facsimile: (212) 451-2222

Eric D. Fein (State Bar No. 06879020)
efein@feinlawfirm.com
Vickie S. Brandt (State Bar No. 24031878)
vbrandt@feinlawfirm.com
The Fein Law Firm, P.C.
15455 N. Dallas Parkway, Suite 1225
Addison, Texas s75001
214-522-9596
214-522-9599
*COUNSEL TO HELGA ARMINAK AND ARMINAK SOLUTIONS, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS--FORT WORTH DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| LEIO CORPORATION, | Case No. 17-45187-MXM |
| Debtor. | |

## UNOPPOSED EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Helga Arminak and Arminak Solutions, LLC (hereinafter together "Arminak") and moves this Court, pursuant to Sections 105 and 362 of Title 11 of the United States Code (the "Bankruptcy Code"), for relief from the automatic stay to allow Arminak to access and remove its equipment housed in a building that was previously leased (the "Debtor") in the above captioned case (this "Case"). In support of the foregoing, Arminak respectfully submits to the Court as follows:

### I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     RELIEF REQUESTED

3.     The purpose of this motion is to seek relief from the automatic stay provisions of section 362(a) to the extent necessary to allow Arminak to access the Debtor's previously leased premises so that Arminak can remove property that belongs to Arminak but is in possession of the Debtor. Although the automatic stay does not apply, under the guise that the interest in the property is "disputed," the Debtor's former landlord has taken the position that Arminak's action to access its own property in the non-debtor landlord's premises is a violation of the stay. To this end, the landlord submitted to this Court's jurisdiction when it improperly removed the action brought by non-debtor Arminak to this bankruptcy case.

4.     There is no property interest dispute. Critically, the Chapter 7 Trustee has reviewed all documentation, consents to this motion and concedes that the estate has no interest in the Equipment (as defined below). Notwithstanding the Landlord's knowledge of the trustee's consent, the non-debtor Landlord has availed itself of this Court's jurisdiction and insists upon using this Court and the automatic stay as a shield to prevent Arminak from accessing its own property.

## III.     STATEMENT OF FACTS

5.     On December 29, 2017 (the "Petition Date") the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code and a Chapter 7 Trustee was appointed.

6.     Prior to the Petition Date, the Debtor leased a facility at 1075 S. Beltline Road, Coppell, Texas (the "Leased Premises") from Majestic Park West Partners, L.P. by its general partner Majestic Coppell G.P., LLC and NM Majestic Holdings, LLC (the "Landlord") pursuant to a Standard Industrial Real Estate Lease dated February 21, 2013 (the "Lease"). In connection with business venture with debtor insiders Jennifer Bancroft and Robert E. Bancroft, Arminak

provided manufacturing equipment and inventory (the "Equipment") for a manufacturing operation located at the Leased Premises. A schedule of the Equipment and Inventory is attached as **Exhibit A** hereto. On December 26, 2017, Robert E. Bancroft wrote to Arminak that she could access the Equipment at any time. On December 27, 2017, Arminak's representatives arrived at the Leased Premises to obtain the Equipment, but found the building locked and access denied.

7. Upon information and belief, the Lease terminated prior to the Petition Date.

8. The Equipment is depreciable and requires continuous maintenance. With the Leased Premises locked, the Equipment cannot be maintained; instead, Arminak's valuable assets are remaining unused and going to waste.

9. Specifically, Arminak's damages are escalating at a daily rate. Her customers have not received products for orders placed in late November 2017 on account of in access to the Equipment. Not only is this causing immediate financial harm to Arminak, it is also jeopardizing long-term relationships with customers. These customers have indicated that they will take their business elsewhere if the product is not shipped promptly.

10. Arminak's ability to seek alternative manufacturing of her products is also jeopardized because much of the Equipment is customized and designed specifically for Arminak's specific product lines. Until the Equipment can be moved, maintained, repaired and started-up, each day lost is another lost day of production. Likewise, raw materials have a shelf-life that is limited for usage in Plaintiff's product lines. Further, without secured storage and supervision the viability of the raw materials is harmed and likely will preclude use for products that have specific manufacturing standards.

11. On January 3, 2018, Arminak commenced an action in the 68th Judicial District

Court, Dallas, Texas (Case No. DC-18-00065) against the Landlord seeking access to the Leased Premises to collect the Equipment (the "State Court Action"). A copy of the First Amended Petition is attached as **Exhibit B** hereto. The Debtor is not party to that action.

12. On January 10, 2018, the Landlord filed a notice of removal of the State Court Action to this Court [ECF Dkt. No. 10], notwithstanding the fact that the debtor is not even a party to the action. Arminak reserves all rights with respect to damages and legal costs caused by the improper removal of the non-debtor action.

13. The notice of removal is based on a false premise: that the equipment is debtor property or "Disputed Property." Not so. In fact, the Trustee has agreed that the Debtor has no interest in the property. Attached as **Exhibit C** hereto is a copy of relevant email communication with the Trustee's counsel.

14. As of the filing of this Motion, the Landlord continues to deny Arminak access to the Leased Premises.

## IV. BASIS FOR RELIEF

15. Pursuant to Bankruptcy Code Section 362, the automatic stay applies to property of the estate. Here, the Trustee is in agreement with the Movant and the Debtor that the Equipment is not property of the estate and has consented to the relief set forth herein. In the meantime, irreparable harm is continuing to ensue absent Arminak's ability to access the equipment. The Landlord's gamesmanship of removing the non-Debtor action concerning non-Debtor property to this Court and then using the automatic stay as the basis for the removal should not be countenanced.

16. Even if the automatic stay did in fact apply (and it does not), under Section 362(d)(1) of the Bankruptcy Code the automatic stay is subject to termination for cause absent adequate protection and under section 362(d)(2) if (1) debtor does not have equity in such

property; and (2) the property is not necessary to an effective reorganization. Here there has been no offer of adequate protection for the use of Equipment. In fact, the Debtor cannot access the Equipment and Arminak continues to be harmed. Moreover, the Debtor has no equity in the equipment and, because this is a Chapter 7 case, there is no prospect for reorganization.

17.     Relief from the automatic stay will not negatively impact the Debtor's bankruptcy case.

## V.
## PRAYER

**WHEREFORE**, for all the foregoing reasons, Arminak respectfully requests the entry of an Order: (i) granting the Motion in its entirety; (ii) authorizing the Arminak to enter the Landlord's premises for the purpose of collecting the Equipment; (iv) directing the Landlord to allow such access; and (iv) granting such other and further relief as is just and appropriate under the circumstances of this Bankruptcy Case.

Respectfully submitted,

By:   /S/ Eric D. Fein
Eric D. Fein
efein@feinlawfirm.com
Vickie S. Brandt
vbrandt@feinlawfirm.com
The Fein Law Firm, P.C.
15455 N. Dallas Parkway, Suite 1225
Addison, Texas 75001
214-522-9596
214-522-9599
*and*

Olshan Frome Wolosky LLP
Michael S. Fox, Esq.
1325 Avenue of the Americas
New York, New York 10019

*COUNSEL FOR MOVANTS HELGA
ARMINAK AND ARMINAK SOLUTIONS,
LLC*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on the 12th day of January 2018, he spoke to, and emailed with, Phil Lamberson, counsel to Majestic Park West Partners, L.P., (the "Landlord") seeking agreement to the relief requested herein. Mr. Lamberson is unopposed to the relief requested.

The undersigned additionally certifies that on the 12th day of January 2018, he conferred with Kenneth Hill, counsel to the Chapter 7 Trustee, regarding the relief requested herein. The Trustee is unopposed to the relief requested.

The undersigned additionally certifies that on the 12th day of January 2018, he conferred with Viviana S. Cavada, counsel for Debtor Leio Corporation, regarding the relief requested herein, and she is unopposed to the relief requested.

/S/ Eric D. Fein
Eric D. Fein

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of January 2018, he caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF Notification System, and via email on counsel to the Trustee and the Landlord.

Trustee
Areya Holder
Law Office of Areya Holder, P.C.
800 W. Airport Freeway Suite 800
Irving, TX 75062

Kenneth A. Hill
kenhill@qslwm.com
Quilling, Selander, et al
2001 Bryan St., Suite 1800
Dallas, TX 75201-4240
214-871-2100
Counsel for Trustee

Phillip L. Lamberson
Devin B. Hahn
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street Dallas, Texas 75201
(214) 745 5400
(214) 745 5390 facsimile
ATTORNEYS FOR LANDLORD DEFENDANTS MAJESTIC PARK WEST PARTNERS, L.P.; NM MAJESTIC HOLDINGS, LLC; AND MAJESTIC REALTY CO.
Viviana S. Cavada
viviana@cavadalawoffices.com
Viviana Cavada, Attorney at Law
P.O. Box 37101
Haltom City, TX 76117
(817) 509-1376
Fax : (817) 509-1351
Attorney for DEBTOR LEIO CORPORATION

U.S. Trustee

/S/Eric D. Fein
Eric D. Fein

# EXHIBIT A

DRAFT
10/24/17

## Exhibit B

### Leased Equipment

- Mold 36 pcs 130g mold sphere
- Mold 36 pcs 130g mold flower
- Ribbon Blender Mixer (7 cu. ft.) stainless Steel
- Semi-Automatic Case Box Carton Sealer Taper CCN-107 x 2
- Glamour Lab VideoJet $6,000.00
- Doboy Super Mustang Wrapper- automatic x1
- Table Top Belt Conveyors ( 10 ftx 12 f x 4.5) x 2
- Belto Het Tunnel x1
- Vacuum Belt x 1
- Hydraulic Press. H Frame. 37" H. 20 Tons
- Bath Bomb Machin
- Freight Cost

M22-PVL-K02-R

AMT12-S1

Globaltek 10'*4" SS CONVEYOR W/ BODINE MOTOR,
CROSSBAR & TRANSFER PLATES(232233673028

Globaltek 10'*4" SS CONVEYOR W/ BODINE MOTOR,
CROSSBAR & TRANSFER PLATES(232233673028

Globaltek 12'*4" SS CONVEYOR W/ BODINE MOTOR,
CROSSBAR & TRANSFER PLATES(232233673028

4"/102mm Sanitary Stainless Steel TriClamp Butterfly Valve
Silicone Seal, SS304

SM312LVQD

SM312LVQD

BRT-THT-100

9268K85

9268K37

9268K13

9268K85

9268K75

9268K137

9268K37

9268K13

9268K75

9268K137

7122k19

3230T36

74995K75

6917K16

92240A583

92141A030

DRAFT
10/24/17

92146A030
92240A242
92141A031
92146A031
90099A031
7096K7
7122K19
8961K15
5469K52
44705K384
7880T132
7880T201
5779K114
5779K156
5097T61
5112K64
5097T41
5779K133
5779K189
5779K109
65575K17
65575K46
65575K37
7641K925
7641K921
7641K921
7641K921
7641K921
7641K33
7641K35
7641K361
7026K6
7009K16
9874T11
9874T11
9874T11
9874T11
7807K93
70355K71
7529K171
5779K152
9268K22
5779K151

DRAFT
10/24/17

9268K108
4429K412
92001A330
5779K108
9268K51
8975K581
6425K133
6425K233
4450K3
4568K154
5537T347
4989K301
4622K55
8902T18
5469K52
6425K233
7096K7
7880T196
7578K45
8902T21
7096K7
5112K64
5097T61
5097T41
3230T36
7880T196
7578K45
9162K133
2725K27
4450K2
91772A203
91831A009
91772A116
91831A005
7008K83
47065T843
62005K124
6498K182
8975K586
8975K53
3259T61
7641K921
91772A205

DRAFT
10/24/17

5148K233
8975SK28
7432K66
91772A839
8280T41
7422K24
52065K278
4934A14
8902T18
7641K921- BLK
7641K921-RED
7641K931
7641K84
7641K33
5945T82
47065T196
6498K399
9874T11-YELLOW
9874T11-BLK
9874T11-RED
6741K7
7557K95
8902T18
7098K43
Moeller EASY719-DC-RC PLC
Moeller EASY719-DC-RC PLC
NCME106-0200C NCM, AIR CYLINDER
Moeller Easy719-DC-RC*
Trynox Clamp Sanitary Stainless Steel 304 4" Heavy Duty
Sanitary Fitting
BUNA-N Gasket | Tri Clamp 4 in. - FDA
NCMB200-0300 SMC Cylinder

| |
|---|
| 8902T18 |
| paint |
| Omron timer - 2 pcs at ebay |
| New Omron H3Y-4 0-10Sec Timer 24VDC - 1 pcs in total |
| 91847A440 |
| 8902T18 |
| 7641K925 |
| 91771AS29 |

DRAFT
10/24/17

| |
|---|
| 5948T942 |
| 7641K921-BLACK |
| 7641K921-RED |
| 7641K921-BLUE |
| 92311A430 |
| 6094T19 |
| 6498K398 |
| NCMB200-0300 Cylinder |
| Heat tunnel |
| Radiant Heat Type Electric Tunnel- 900mm Long with Adjustable Heater Element x 3 |
| Aluminum Punk x 175 |

| | |
|---|---|
| 92240A242 | 18-8 Stainless Steel Hex Head Screw, 3/8"-16 Thread Size, 1-5/8" Long, Fully Threaded, Packs of 10 |
| 29305A61 | 7-Piece Hex-Shank Drill Bit Set |
| 7380K42 | Flat Oil-Resistant Panel Light with Screw Terminals, 120V AC, Green |
| 90099A031 | 18-8 Stainless Steel Extra-Wide Nylon-Insert Locknut, 3/8"-16 Thread Size, Packs of 5 |
| 47065T843 | T-Slotted Framing, Fixed Height Mounting Foot, for 1-1/2" High Single Rail |
| 3259T61 | Strut Channel Nuts with Spring, Zinc-Plated, 13/16" Channel High, 5/16-18 Thread Size, Packs of 5 |
| 5537T347 | T-Slotted Framing, Extended Corner Bracket for 40mm Single Rail |
| AS001-0001 | 3.125 Round X 5.15 Tall with 2.5" Bore 4.77 Deep. 3.5" Round Acetal. |

# LEIO CORP.

# INVENTORY LIST

| Name | Manufacturer | Lot # | Net Weight Container | Quantity in Stock (Each Drum) | Specific Weight | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|---|---|---|---|
| Citric Acid-Brown Drgs | TATE & LYLE | DA17/00173 | 22.68 KGs | | | | | |
| Citric Acid | CAPTAIN DRAKE | 1705-4084 | 22.68 KGs | | | | | |
| Citric Acid | SUN SHINE | 1705-4075 | 22.68 KGs | | | | | |
| Citric Acid | SUN SHINE | 1708-3263 | 22.68 KGs | | | | | |
| | | | | | | | | |
| EPSOM Salt | FCtorporation | 1170632 | 22.7 KGs | | | | | |
| Sodium Bicarbonate | Natural Soda | | 22.68 KGs | | | | | |
| Sodium Bicarbonate | Natural Soda | N11172811-2 | 22.68 KGs | | | | | |
| Sodium Coco Sulfate | PEPPMCO | 80830 | 25 KGs | | | | | |
| Sodium Bicarbonate | Arm & Hammer | WW0218 | 22.68 KGs | | | | | |
| BENZOPHENONE | MFCL | SUL-10176521 | 25 KGs | | | | | |
| | | | | | | | | |
| Grey Mountain | BELLE AISE | M0920170062 | 181.4 KGs | | | | | |
| Sugared Cookies | FRAGWEST | | 90.7 KGS | | | | | |
| Enhanced White Wood | AGILEX | 170993633 | 181.4 KGs | | | | | |
| Love Tart | AGILEX | 170911946 | 181.4 KGs | | | | | |
| Love Tart | AGILEX | 170911946 | 61.7 KGs | | | | | |
| Champagne Rose | AGILEX | 170910000 | 181.4 KGs | | | | | |
| Sugar Plum | DELLE AISE | A100217017 | 161.48 KGs | | | | | |
| Pink Magnolia | DELLE AISE | | 169.93 KGs | | | | | |
| Lustious Emb'asso type | DELLE AISE | 7279412 | 20.8 KGs | | | | | |
| Orange Sherbet | ORCHIDIA | 7202013 | 181.4 KGs | | | | | |

| Description | Manufacturer | Batch # | Net Weight- Each- In KGs | Quantity in Stock - Box |
|---|---|---|---|---|
| COVAPEARL STAR SILVER 9372 | SENSIENT | 1066843 | 20 KGS | 3 |
| UNIPURE BLACK LC989 | SENSIENT | 5461108 | 20 KGS | 2 |
| UNIPURE BLACK LC989 | SENSIENT | 5451805 | 5 KGS | 1 |
| FD&C RED NO.40 | SENSIENT | 1606-0014 | 1 KG | 4 |
| D&C RED NO. 33 ALUM LAKE | SENSIENT | AX7856 | 20 KGs | 1 |
| UNIPURE GREEN LC788 | SENSIENT | 5448643 | 1 KG | 2 |
| UNIPURE GREEN LC788 | SENSIENT | 5467904 | 5 KGS | 1 |
| RED 27 ALUM LAKE | SENSIENT | AX7856 | 20 KGS | 1 |
| YELLOW 10 ALUMLAKE 14-18 % | SENSIENT | AX2628 | 1 KG | 1 |
| YELLOW 10 ALUMLAKE 14-18 % | SENSIENT | AX8641 | 20 KGS | 1 |
| UNIPURE RED LC300 | SENSIENT | AY0040 | 1 KG | 1 |
| YELLOW IRON OXIDE EA-1301 | | 1607-0008 | 5 KGS | 1 |
| UNIPURE RED LC304 | SENSIENT | AX8169 | 10 KGS | 1 |
| YELLOW 5 ALUM LAKE 14-16% | SENSIENT | AV3268 | 20 KGS | 1 |

# EXHIBIT B

**From:** **Kenneth Hill** kenhill@qslwm.com 
**Subject:** FW: Leio Corporation
**Date:** January 9, 2018 at 2:57 PM
**To:** Fox, Michael S. MFox@olshanlaw.com, Fleming, Thomas J. TFleming@olshanlaw.com, Eric Fein efein@feinlawfirm.com
**Cc:** Areya Holder Aurzada areya@holderlawpc.com, Viviana Leigh Cavada viviana.cavada@cavadalawoffice.com

Gentlemen,

This confirms that my client, Areya Holder Aurzada (the "Trustee") in her capacity as the chapter 7 trustee for Leio Corporation, has determined that the property listed in the attached Inventory List (the "Subject Inventory") is not property of Leio Corporation's bankruptcy estate. This determination is limited only to the Subject Inventory. The Trustee does not take a position at this time as to anything else. If Ms. Arminak chooses to file a motion for relief from stay as to the Subject Inventory, you may represent that the Trustee is unopposed.

Thanks,
Ken


Kenneth A. Hill
Attorney at Law
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street Suite 1800
Dallas, TX 75201
214-871-2100 (main)
214-880-1834 (direct)
214-871-2111 (fax)

Nothing in this email message constitutes an electronic signature under the Uniform Electronic Transactions Act or other applicable law. IRS Circular 230 Disclosure: to comply with requirements imposed by the Department of the Treasury, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and that it cannot be used by any taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer, and (ii) supporting the promotion or marketing of any transactions or matters addressed herein.

**From:** Kenneth Hill
**Sent:** Monday, January 08, 2018 2:57 PM
**To:** 'Fox, Michael S.' <MFox@olshanlaw.com>
**Cc:** Fleming, Thomas J. <TFleming@olshanlaw.com>; Eric Fein <efein@feinlawfirm.com>; Areya Holder Aurzada <areya@holderlawpc.com>; 'Viviana Leigh Cavada' <viviana.cavada@cavadalawoffice.com>
**Subject:** Leio Corporation

Gentlemen,

As you know, I represent Areya Holder Aurzada (the "Trustee") in her capacity as the chapter 7 trustee for Leio Corporation. After diligent investigation, the Trustee has determined that the property listed in Exhibit "B" to the Confidential Binding Term Sheet attached to this email (defined in the Confidential Binding Term Sheet as the "Leased Equipment") is not property of Leio Corporation's bankruptcy estate. This determination is limited only to the Leased Equipment. The Trustee does not take a position at this time as to anything else. If Ms. Arminak chooses to file a motion for relief from stay as to the Leased Equipment, you may represent that the Trustee is unopposed.

Thanks,
Ken

Kenneth A. Hill                    214-871-2100 (Main)
Attorney at Law                    214-880-1834 (Direct)
                                   214-871-2111 (Fax)

**Quilling, Selander, Lownds,**
**Winslett & Moser, P.C.**
2001 Bryan Street, Suite 1800
Dallas, TX 75201
Email: kenhill@qslwm.com
Website: www.qslwm.com

Nothing in this email message constitutes an electronic signature under the Uniform Electronic Transactions Act or other applicable law. IRS Circular 230 Disclosure: to comply with requirements imposed by the Department of the Treasury, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and that it cannot be used by any taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer, and (ii) supporting the promotion or marketing of any transactions or matters addressed herein.

PDF

Inventory
List.pdf

# LEIO CORP.

## INVENTORY LIST



| Description | Name | Code | Quantity |
|---|---|---|---|
| Citric Acid-Brown Dept. | TATE & LYLE | DA11D0151 | 22.68 KGs |
| Citric Acid | CAPTAIN FRANK | 27004034 | 22.68 KGs |
| Citric Acid | SUNSHINE | 17004029 | 22.68 KGs |
| Citric Acid | SUNSHINE | 17051283 | 22.68 KGs |
| EPSOM SALT | Fillerpolinias | LI70042 | 22.7 KGs |
| Sodium Bicarbonate | Natural Soda | | 22.68 KGs |
| Sodium Bicarbonate | Natural Soda | 411728124 | 22.68 KGs |
| Sodium Geo-Sulfate | TEPPANCO | 22310 | 23 KGs |
| Sodium Bicarbonate | Arm & Hammer | WW7285 | 22.68 KGs |
| MENTONMENONE | MFG | SUC201795311 | 23 KGs |
| Grey Mountain | BELLEAISE | M202021D620 | 181.4 KGs |
| Superbed Coolers | FRAGI-VEST | 17085933S | 90.7 KGS |
| Enhanced White Wood | AGMEX | 17031246 | 181.4 KGs |
| Love Tint | AGMEX | | 181.4 KGs |
| Love Tint | AGMEX | 170511346 | 61.7 KGs |
| Champagne Rose | AGMEX | 170510295 | 181.4 KGs |
| Sugar Plum | BELLEAISE | A000021D217 | 161.49 KGs |
| Pink Magnolia | BELLEAISE | | 166.93 KGs |
| Interlain Enhancer type | Reise Aise | 1979112 | 10.8 KGs |
| Orange Sherbet | ORCHIDIA | 72820212 | 181.4 KGs |

| Description | Manufacturer | Batch # | Net Weight- Each- In KGs | Quantity in Stock - Box |
|---|---|---|---|---|
| COVAPEARL STAR SILVER 9372 | SENSIENT | 1066843 | 20 KGs | 3 |
| UNIPURE BLACK LC989 | SENSIENT | 5461108 | 20 KGs | 2 |
| UNIPURE BLACK LC989 | SENSIENT | 5451805 | 5 KGs | 1 |
| FD&C RED NO.40 | SENSIENT | 1606-0014 | 1 KG | 4 |
| D&C RED NO. 33 ALUM LAKE | SENSIENT | AX7856 | 20 KG | 1 |
| UNIPURE GREEN LC788 | SENSIENT | 5448643 | 1 KG | 2 |
| UNIPURE GREEN LC788 | SENSIENT | 5467904 | 5 KG | 1 |
| RED 27 ALUM LAKE | SENSIENT | AX7856 | 20 KG | 1 |
| YELLOW 10 ALUMLAKE 14-18 % | SENSIENT | AX2628 | 1 KG | 1 |
| YELLOW 10 ALUMLAKE 14-18 % | SENSIENT | AX8641 | 20 KGs | 1 |
| UNIPURE RED LC300 | SENSIENT | AY0040 | 1 KG | 1 |
| YELLOW IRON OXIDE EA-1301 | | 1607-0008 | 5 KGs | 1 |
| UNIPURE RED LC304 | SENSIENT | AX8169 | 10 KGs | 1 |
| YELLOW 5 ALUM LAKE 14-16% | SENSIENT | AV3268 | 20 KGs | 1 |

DRAFT
10/24/17

## CONFIDENTIAL BINDING TERM SHEET

## LEIO CORPORATION

October 24, 2017

This Confidential Binding Term Sheet summarizes the principal terms of the investment and financing by Helga D. Arminak ("Investor") in LEIO Corporation, a Texas corporation (the "Company" or "LEIO"). This Term Sheet is intended to create binding legal and contractual obligations of the parties hereto with respect to matters set forth herein, until such time as definitive documentation can be executed that will supersede this Term Sheet. Upon the breach by a party of its obligations hereunder, the injured party shall have such rights and remedies with respect thereto as are available to it under applicable law. This Term Sheet shall be governed in all respects by the laws of the State of Texas.

| | |
|---|---|
| *Current Capitalization:* | Authorized Shares:  10,000,000 shares of common stock, no par value<br><br>The Company represents that <u>Exhibit A</u> hereto sets forth the number of shares of common stock that each stockholder of the Company owns, which constitutes all of the issued and outstanding stock of the Company.  The Company represents that there are no agreements, options, warrants or other rights outstanding granting any person the right to purchase shares of the Company. |
| *Issuance:* | Investor shall receive on the date of this Term Sheet 20% of the outstanding stock of the Company. |
| *Purchase Price:* | Investor will receive 20% of the outstanding stock of the Company to incentivize Investor to develop business opportunities and introduction of clientele that creates significant incremental value for LEIO.<br><br>Investor and the Company agree that the Company currently has nominal value and the value of the 20% of the Company issued to Investor has nominal value. |
| *Board of Directors:* | Board shall be fixed at 3 members and Investor shall have the right to appoint 1 director (the "**Investor Designee**").<br><br>For so long as the Loan (as defined below) remains outstanding, the Board shall not undertake any of the following "Major Decisions" without the consent of the Investor Designee:<br><br>- issuance of shares of common stock;<br>- changes in authorized number of capital stock;<br>- changes in capital structure or organizational structure;<br>- incurrence of new debt or prepayment of any existing debt;<br>- redemption or repurchase of any shares of capital stock;<br>- declare or pay any dividend or distribution;<br>- change the number of directors; |

DRAFT
10/24/17

<table>
<tr>
<td></td>
<td>
<ul>
<li>liquidate, dissolve, or undertake a change in control;</li>
<li>declare bankruptcy;</li>
<li>change line of business or undertake a new product line;</li>
<li>purchase or sell assets in excess of $50,000;</li>
<li>entry into distribution or reseller agreements; and</li>
<li>make investments in excess of $50,000.</li>
</ul>

Once the Loan is repaid in full, the Board shall not undertake any of the following "Major Decisions" without the consent of the Investor Designee:
<ul>
<li>changes in capital structure or organizational structure that will adversely effect the Investor;</li>
<li>change line of business; or</li>
<li>liquidate, dissolve, or declare bankruptcy.</li>
</ul>
</td>
</tr>
<tr>
<td><em>Right of First Refusal / Participation Rights:</em></td>
<td>In addition to the rights described under "Board of Directors", should LEIO waive its right to repurchase securities to be sold by any stockholder of the Company, the Investor shall have a right of first refusal to purchase securities to be sold by said stockholder of the Company at the same price offered to LEIO.

Investor will also have the right to participate on a pro rata basis in subsequent issuances of equity securities, including securities convertible into equity.</td>
</tr>
<tr>
<td><em>Senior Secured Promissory Note:</em></td>
<td>Investor has loaned $250,000 to the Company, in cash and through the payment of Company bills (collectively, the "<u>Loan</u>") and loaned $924,000 worth of materials for use by the Company, which materials are listed on <u>Exhibit B</u> hereto (the "<u>Leased Equipment</u>"). The Company shall pay Investor for use of the Leased Equipment on terms to be agreed upon. All Leased Equipment shall continue to be owned exclusively by Investor.</td>
</tr>
<tr>
<td><em>Interest Rate:</em></td>
<td>The Loan shall bear interest at 9.9% per annum, superseding prior agreements at higher interest rates. Interest shall accrue and be payable on the maturity date or upon prepayment. Any subsequent loans provided by Investor, in her sole discretion, shall bear interest at 9.9% and interest shall accrue and be payable on the maturity date or upon prepayment.</td>
</tr>
<tr>
<td><em>Maturity Date:</em></td>
<td>December 31, 2019, unless earlier paid or accelerated.</td>
</tr>
<tr>
<td><em>Collateral &amp; Guarantees:</em></td>
<td>The indebtedness evidenced by the Loan shall be secured by all assets of the Company equivalent to the outstanding principal plus accrued interest with a priority lien, senior to all existing and future indebtedness of the Company with the exception of the Company's pre-existing loan with Hunter Caroline.

The Company consents to Investor filing a UCC-1 financing statement on the date hereof to perfect her security interest established herein.</td>
</tr>
<tr>
<td><em>Mandatory</em></td>
<td>The Company and Investor will negotiate in good faith to define a mutually</td>
</tr>
</table>

DRAFT
10/24/17

| | |
|---|---|
| *Prepayment:* | agreeable loan repayment schedule. |
| *Optional Prepayment:* | The Loan may be prepaid at the option of the Company in whole or in part at par plus accrued and unpaid interest to the date of prepayment without penalty or premium. |
| *Distributions:* | All Company cash not required as a reasonable reserve for capital replacements, loan repayments, payment to third party creditors or other expenses of the Company, as reasonably determined by LEIO Management, shall be distributed pro rata to stockholders. |
| *Conversion:* | LEIO will (as part of the transactions set forth herein or otherwise) convert its entity form to a limited liability company, so long as Investor's ownership in the converted form is the same proportion immediately subsequent to such conversion as it was immediately prior to such conversion and Investor will not be adversely effected. |
| *Drag Along Rights:* | Holders of a majority of the Common Stock may cause all Common Stock issued in connection herewith to participate, on a *pari passu* basis with respect to price per share of Common Stock and general terms thereof, in any sale of all or substantially all of the shares of Common Stock in LEIO to a third party in an arm's length transaction. |
| *Financial Structure on Sale of Goods:* | Investor shall receive, in her capacity as an independent contractor, a 20% commission on gross profit of all sales of LEIO owned brands to customers originated by Investor.<br><br>When LEIO participates jointly with an Arminak owned/controlled entity to secure and deliver products and services, the parties will share equally in the profits unless otherwise agreed to by the parties.  In this structure, Arminak earns upside for the profit earned by the Arminak entity (-ies) in addition to her pro rata share of LEIO's profit. |

DRAFT
10/24/17

| | |
|---|---|
| *Indemnification:* | The Company and the existing stockholders hereby agree to indemnify and hold harmless (to the fullest extent permitted by applicable law) the Investor and its affiliates, subsidiaries, officers, directors, employees, agents, controlling persons and successors and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any kind (including reasonable attorneys' fees, costs and expenses) in connection with any liabilities, losses, damages, actions, suits, judgments or investigative or administrative proceedings ("**Liabilities**") that may be suffered or incurred by any such indemnified person in connection with Investor's investment in the Company, the Loan, this Term Sheet, any actions taken by LEIO management or the Board prior to the date hereof, including without limitation, relating to the Company's S-corporation status, and the exercise by Investor of any rights, remedies or privileges hereunder or thereunder, other than Liabilities arising as a result of the Lender's bad faith, gross negligence, willful misconduct or direct participation as a member of the Board of Directors. |
| *Non-Circumvent* | The Company agrees to keep confidential the names of any contacts introduced or revealed by Investor, and that the Company's associates, joint ventures, partnerships, divisions, subsidiaries, employees, agents, heirs, assigns, designees, or consultants will not contact, deal with, negotiate or participate in any transactions with any of the contacts without the prior written consent of the Investor. Such confidentiality will include any names, addresses, telephone, telex, facsimile numbers, formulations, distribution models, marketing plans, product concepts and/or other pertinent information disclosed or revealed to the Company.

The Company agrees not to disclose, reveal or make use of any information during discussion or observation regarding methods, concepts, ideas, product/services, or proposed new products or services, nor to do business with any of the revealed contacts without the written consent of the Investor. The parties agree to not disclose any intellectual property owned by Investor. Intellectual property may include formulations, ingredients, device technology or usage, and or any material relating to the creation or distribution of products.

In case of circumvention, the Company agrees and guarantees that they will pay a legal monetary penalty that is equal to the commission or income the Investor should have realized in such transactions, by the person(s) engaged on the circumvention for each occurrence. If Investor commences legal proceedings to interpret or enforce the terms of this Term Sheet, the Investor will be entitled to recover court costs and reasonable attorney fees. |
| *Other Terms:* | The definitive loan documents will contain representations and warranties, covenants, events of default and remedies, indemnities and conditions, in each case customary and reasonable for transactions of this type. Events of default shall be customary and appropriate and acceptable to the Investor (with cure and grace periods and exceptions to be mutually agreed), including without limitation failure to make payments when due, defaults under other material |

DRAFT
10/24/17

| | |
|---|---|
| | agreements or instruments of indebtedness, noncompliance with covenants, breaches of representations and warranties, bankruptcy, judgments in excess of specified amounts, invalidity of guaranties, impairment of security interests in collateral, and "changes of control" (to be defined in a mutually agreed upon manner). |
| *Information Rights:* | Investor shall have reasonable access to information and inspection rights and receive monthly reports on receipts and disbursements from the Company. |
| *Definitive Documentation:* | The parties have engaged in negotiations and reached agreement in principle to undertake the matters set forth herein and will use their best efforts to complete negotiations and execute definitive documentation containing mutually agreeable terms and conditions consistent with this Term Sheet. To the extent definitive documentation is not entered into by December 31, 2017, Investor shall have the right to demand payment in full plus interest of the Loan. |
| *No Other Agreements* | The parties agree that as of this date there are no oral or written representations, agreements or understandings concerning the subject matter of this Term Sheet or the transactions contemplated herein. No person or entity other than the parties to this Term Sheet shall have any rights under this Term Sheet. |

By signing in the space provided below, each party hereto represents that the foregoing accurately reflects its understanding of the matters set forth herein.

LEIO CORPORATION

By: _____

Helga D. Arminak

By: _____

Name: _____

Title: _____

4354373-2
4356725-4

DRAFT
10/24/17

Exhibit A

Capitalization Table

4354373-2
4356725-4

DRAFT
10/24/17

### Exhibit B

### Leased Equipment

- Mold 36 pcs 130g mold sphere
- Mold 36 pcs 130g mold flower
- Ribbon Blender Mixer (7 cu. ft.) stainless Steel
- <u>Semi-Automatic Case Box Carton Sealer Taper CCN-107</u> x 2
- Glamour Lab VideoJet $6,000.00
- Doboy Super Mustang Wrapper- automatic x1
- Table Top Belt Conveyors ( 10 ftx 12 f x 4.5) x 2
- Belto Het Tunnel x1
- Vacuum Belt x 1
- <u>Hydraulic Press. H Frame. 37" H. 20 Tons</u>
- Bath Bomb Machin
- Freight Cost

M22-PVL-K02-R

AMT12-S1

Globaltek 10'*4" SS CONVEYOR W/ BODINE MOTOR, CROSSBAR & TRANSFER PLATES(232233673028

Globaltek 10'*4" SS CONVEYOR W/ BODINE MOTOR, CROSSBAR & TRANSFER PLATES(232233673028

Globaltek 12'*4" SS CONVEYOR W/ BODINE MOTOR, CROSSBAR & TRANSFER PLATES(232233673028

4"/102mm Sanitary Stainless Steel TriClamp Butterfly Valve Silicone Seal, SS304

SM312LVQD

SM312LVQD

BRT-THT-100

9268K85

9268K37

9268K13

9268K85

9268K75

9268K137

9268K37

9268K13

9268K75

9268K137

7122k19

3230T36

74995K75

6917K16

92240A583

92141A030

DRAFT
10/24/17

92146A030
92240A242
92141A031
92146A031
90099A031
7096K7
7122K19
8961K15
5469K52
44705K384
7880T132
7880T201
5779K114
5779K156
5097T61
5112K64
5097T41
5779K133
5779K189
5779K109
65575K17
65575K46
65575K37
7641K925
7641K921
7641K921
7641K921
7641K921
7641K33
7641K35
7641K361
7026K6
7009K16
9874T11
9874T11
9874T11
9874T11
7807K93
70355K71
7529K171
5779K152
9268K22
5779K151

DRAFT
10/24/17

9268K108
4429K412
92001A330
5779K108
9268K51
8975K581
6425K133
6425K233
4450K3
4568K154
5537T347
4989K301
4622K55
8902T18
5469K52
6425K233
7096K7
7880T196
7578K45
8902T21
7096K7
5112K64
5097T61
5097T41
3230T36
7880T196
7578K45
9162K133
2725K27
4450K2
91772A203
91831A009
91772A116
91831A005
7008K83
47065T843
62005K124
6498K182
8975K586
8975K53
3259T61
7641K921
91772A205

DRAFT
10/24/17

    5148K233
    89755K28
    7432K66
    91772A839
    8280T41
    7422K24
    52065K278
    4934A14
    8902T18
    7641K921- BLK
    7641K921-RED
    7641K931
    7641K84
    7641K33
    5945T82
    47065T196
    6498K399
    9874T11-YELLOW
    9874T11-BLK
    9874T11-RED
    6741K7
    7557K95
    8902T18
    7098K43
    Moeller EASY719-DC-RC PLC
    Moeller EASY719-DC-RC PLC
    NCME106-0200C NCM, AIR CYLINDER
    Moeller Easy719-DC-RC*
    Trynox Clamp Sanitary Stainless Steel 304 4" Heavy Duty
    Sanitary Fitting
    BUNA-N Gasket | Tri Clamp 4 in. - FDA
    NCMB200-0300 SMC Cylinder

| |
|---|
| 8902T18 |
| paint |
| Omeron timer - 2 pcs at ebay |
| New Omron H3Y-4 0-10Sec Timer 24VDC - 1 pcs in total |
| 91847A440 |
| 8902T18 |
| 7641K925 |
| 91771A829 |

DRAFT
10/24/17

| |
|---|
| 5948T942 |
| 7641K921-BLACK |
| 7641K921-RED |
| 7641K921-BLUE |
| 92311A430 |
| 6094T19 |
| 6498K398 |
| NCMB200-0300 Cylinder |
| Heat tunnel |
| Radiant Heat Type Electric Tunnel- 900mm Long with Adjustable Heater Element x 3 |
| Aluminum Punk x 175 |

92240A242   18-8 Stainless Steel Hex Head Screw, 3/8"-16 Thread Size, 1-5/8" Long, Fully Threaded, Packs of 10

29305A61    7-Piece Hex-Shank Drill Bit Set

7380K42     Flat Oil-Resistant Panel Light with Screw Terminals, 120V AC, Green

90099A031   18-8 Stainless Steel Extra-Wide Nylon-Insert Locknut, 3/8"-16 Thread Size, Packs of 5

47065T843   T-Slotted Framing, Fixed Height Mounting Foot, for 1-1/2" High Single Rail

3259T61     Strut Channel Nuts with Spring, Zinc-Plated, 13/16" Channel High, 5/16-18 Thread Size, Packs of 5

5537T347    T-Slotted Framing, Extended Corner Bracket for 40mm Single Rail

AS001-0001  3.125 Round X 5.15 Tall with 2.5" Bore 4.77 Deep. 3.5" Round Acetal.

# EXHIBIT C

FILED
DALLAS COUNTY
1/9/2018 11:51 AM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-18-00065

| | | |
|---|---|---|
| HELGA ARMINAK and ARMINAK SOLUTIONS, LLC d/b/a CHRISLIE and KBL, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | 68th JUDICIAL DISTRICT |
| JENNIFER BANCROFT, ROBERT BANCROFT, MAJESTIC PARK WEST PARTNERS, L.P. by its General Partner MAJESTIC COPPELL G.P., LLC, NM MAJESTIC HOLDINGS, LLC; MAJESTIC REALTY CO., | § § § § § § § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## FIRST AMENDED PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs Helga Arminak and Arminak Solutions, LLC d/b/a Chrislie and KBL and files their First Amended Petition complaining of JENNIFER BANCROFT, ROBERT BANCROFT, MAJESTIC PARK WEST PARTNERS, L.P. by its General Partner MAJESTIC COPPELL G.P., LLC, NM MAJESTIC HOLDINGS, LLC; MAJESTIC REALTY CO., and as grounds shows the following:

### I.
### DISCOVERY CONTROL PLAN AND RULE 47 DISCLOSURE

1.      The discovery in this case shall be governed by Texas Rules of Civil Procedure. 190.4 (Level III). Pursuant to Rule 47, Plaintiffs seek monetary relief of over $1,000,000.00. Tex. R. Civ. P. 47(b)(5).

### II.
### PARTIES

2.      Plaintiff Helga Arminak, an individual residing in the State of California. Plaintiff Arminak Solutions, LLC is a limited liability company organized under the Laws of the

State of California. Plaintiff Helga Arminak is the sole and managing member of Plaintiff Arminak Solutions, LLC.

3.      Defendant MAJESTIC PARK WEST PARTNERS, L.P. is a Delaware limited partnership that may be served through its registered agent at Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904 (302-734-1450) or through its General Partner, MAJESTIC COPPELL G.P., LLC's registered agent at Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904 (302-734-1450).

4.      Defendant NM MAJESTIC HOLDINGS, LLC is a Delaware limited liability company that may be served through it Registered Agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 (302-658-7581).

5.      Defendant MAJESTIC REALTY CO. a/k/a MRC Majestic Texas, Inc. is a corporation organized under the laws of the State of California and registered as a foreign corporation in the State of Texas and may be served through its registered agent, Paul A. Sorrels, Jr. 5400 LBJ Freeway, Suite 110, Dallas, Texas 75240.

6.      Defendant Jennifer Bancroft is an individual and may be served at her residence located at 6780 St Moritz Parkway, Colleyville, Texas 76034.

7.      Defendant Robert E. Bancroft is an individual and may be served at his residence located at 6780 St Moritz Parkway, Colleyville, Texas 76034.

8.      Defendants Jennifer Bancroft and Robert E. Bancroft are sometimes referred to herein as the "Bancroft Defendants."

9.      Defendants Majestic Park West Partners L.P., Majestic Coppell G.P., Inc., Majestic Holdings, LLC, and Majestic Realty Co. are sometimes referred to herein as the "Landlord Defendants."

## III.
## JURISDICTION AND VENUE

10.    The Court has jurisdiction over Defendant and venue is proper in Dallas County, Texas inasmuch as the events giving rise to this action and all or part of the acts complained of took place in Dallas County, Texas. In addition, the Parties agreed to jurisdiction in Dallas County, Texas. The Court has jurisdiction over the controversy because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

11.    Venue is properly maintainable in Dallas County, Texas pursuant to Section 15.002 of the Tex. Civ. Prac. & Rem. Code. Plaintiff would show the Court that events giving rise to the claim occurred in Dallas County, Texas.

## IV.
## FACTS

12.    In July 2017, Plaintiff Helga Arminak entered into discussions with Jennifer Bancroft and Robert E. Bancroft regarding a potential business venture to support rapidly expanding business opportunities.

13.    Jennifer Bancroft and Robert E. Bancroft represented to Plaintiff Helga Arminak that they worked with numerous companies that were seeking contract manufacturing services for their product lines of personal grooming categories and nutritional supplements. Jennifer Bancroft and Robert E. Bancroft represented that they were anxious to take on the new customers' business, had committed to take on the new customers' business, but the current manufacturing operation did not have the capacity to support the business and they did not have the cash flow to purchase equipment, raw materials and to provide labor.

14.    Jennifer Bancroft and Robert E. Bancroft represented that their business model was as a contract manufacturer to provide manufacturing services in the skin care, hair care, and personal grooming categories along with manufacturing of nutritional supplements. Jennifer

Bancroft and Robert E. Bancroft represented that they could provide a full compliment of services including manufacturing, packaging and shipping to the clients' customers.

15.     Jennifer Bancroft and Robert E. Bancroft represented to Plaintiff Helga Arminak that they had several customers seeking their contract manufacturing services for large volumes of product, but Jennifer Bancroft and Robert E. Bancroft did not have the equipment and cash flow to start-up and support the new customers' manufacturing business.

16.     Jennifer Bancroft and Robert E. Bancroft represented to Plaintiff Helga Arminak that if she would provide manufacturing equipment and provide funds, the new volume of business would quickly generate cash flow, they could quickly re-pay Plaintiff, and together they could develop business opportunities and introduce clientele that would enhance the value of their respective businesses.

17.     Jennifer Bancroft and Robert E. Bancroft represented that the new customers were ready to commit and/or already committed, and that manufacturing of their products could begin immediately upon receipt of the Plaintiff's manufacturing equipment and influx of cash.

18.     Jennifer Bancroft and Robert E. Bancroft also represented that they could manufacture Plaintiff's products at a better price and more expeditiously since they would have Plaintiff's equipment.

19.     Based upon Jennifer Bancroft and Robert E. Bancroft's representations, Plaintiff Helga Arminak and LEIO Corporation entered into a  on October 24, 2017, and  Plaintiff Helga Arminak and Arminak Solutions provided a loan of $250,000 and loaned $924,000.00 worth of raw materials and equipment.

20.     The location of the manufacturing operation was 1075 South Beltline Road, Suite 200, Colleyville, Texas 75019-4640 [hereinafter "Premises"].

21.    Plaintiff Helga Arminak provided additional loans up to and including on December 1, 2017. The total amount of the loans was $1,152,332.10.

22.    Almost immediately, Plaintiff Helga Arminak learned that the purported new customers had not manifested and that the manufacturing operation was not operating as represented. Plaintiff's inquiries about the status of the new customers were met with further representations that the new business was coming but had been delayed, that the new customers were waiting until the new year, and that the new customers were still on target.

23.    Within days of the first loan of funds, Jennifer Bancroft and Robert E. Bancroft asked for additional funds.

24.    Payroll was not met in early December 2017.

25.    By December 18, 2017, Jennifer Bancroft and Robert E. Bancroft again requested additional loans to cover payroll.

26.    Separately, Plaintiff Helga Arminak was refused access to a storage facility to secure her raw materials and to obtain product that had already been manufactured. Jennifer Bancroft and Robert E. Bancroft represented that it was just a miscommunication.

27.    Plaintiff Helga Arminak subsequently learned directly from the storage vendor that it had not been paid, and refused to release the product to Plaintiff.

28.    On December 22, 2017 Plaintiff Helga Arminak demanded return of her equipment, raw materials, and product from Jennifer Bancroft and Robert E. Bancroft.

29.    On December 26, 2017 Robert E. Bancroft wrote to Plaintiff Helga Arminak that she could access and obtain her equipment, raw materials and product at any time, and acknowledged her ownership of said materials.

30.   On December 27, 2017, Plaintiff's representatives arrived at 1075 South Belt Line Road, Suite 200, Coppell, Texas 75019-4640 to obtain Plaintiff's equipment, raw materials and product. They found the building locked up and access was denied.

31.   The Owner/Landlord of the Premises located at 1075 South Beltline Road, Suite 200, Colleyville, Texas 75019-4640 is MAJESTIC PARK WEST PARTNERS, L.P. by its General Partner MAJESTIC COPPELL G.P., LLC and NM MAJESTIC HOLDINGS, LLC [hereinafter "Owner/Landlord"].

32.   The Property Manager acting as agent for the Owner/Landlord is Majestic Realty Co. locked out the Premises and denied access.

33.   Unbeknownst to Plaintiff, the Property Manager locked out the Premises and refused access to all for failure to pay rent on or about December 28, 2017.

34.   Plaintiff contacted the Landlord Defendants and demanded access to the Premises to obtain and secure her equipment, raw materials and product. Even though the Landlord Defendants was advised that the ownership of the materials was not in dispute, the Landlord Defendants has refused to allow Plaintiff to obtain her equipment, raw materials and product.

35.   Plaintiff's damages are escalating at a daily rate. Her customers have not received products for order placed in late November 2017. Not only is this causing immediate financial harm to Plaintiff, it is also jeopardizing long-term relationships with customers. These customers have indicated that they will take their business elsewhere if the product is not shipped promptly.

36.   Plaintiff's ability to seek alternative manufacturing of her products is also jeopardized because much of her equipment is customized and designed specifically for Plaintiff's product lines for Chrislie and KBL. Until the equipment can be moved, maintained, repaired and started-up each day lost is another lost day of production. Likewise, raw materials

have a shelf-life that is limited for usage in Plaintiff's product lines. Further, without secure storage and supervision the viability of the raw materials is harmed and likely will preclude use for products that have specific manufacturing standards.

37. As a result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts in excess of the minimum jurisdiction of the Court.

38. As a result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts in excess of the minimum jurisdiction of the Court.

## V.
## MISREPRESENTATION/FRAUD/FRAUD IN THE INDUCEMENT AND BY NON-DISCLOSURE/STATUTORY FRAUD

39. Plaintiffs reallege and repeat each and every allegation contained in Paragraphs 1 through Paragraph 38 as if such allegations were fully restated herein.

40. The Bancroft Defendants made representations and omissions as described above. The representations and omissions were made in the course and scope of the Bancroft Defendants' business and/or transaction in which the Bancroft Defendants had an interest. As described more fully above, the Bancroft Defendants did not exercise reasonable care or competence in communicating information to Plaintiffs with regard to the manufacturing services.

41. The Bancroft Defendants made representations regarding the capacity, financial status and new customer base that was false. Plaintiffs relied on the representations.

42. The misrepresentations that were made were false; the Bancroft Defendants knew the representations were false or made them recklessly as a positive assertion without knowledge of their truth; and with the intent that the Plaintiffs act on the representations, information or omissions.

43. Plaintiffs justifiably relied on the representations and information or omissions.

44. On information and belief Defendants Jennifer Bancroft and Robert E. Bancroft misrepresented the following:

a. Misrepresented the company's manufacturing capabilities

b. Misrepresented the financial status and position of the business

c. Misrepresented that the manufacturing business was operating smoothly and the loan of equipment and funds was solely for the purposes of securing new business

d. Misrepresented that they had the expertise, knowledge and ability to could secure new business opportunities

e. Misrepresented that the new customers and business opportunities were already secured, only the initial cash injection and new equipment was necessary to begin production

f. Misrepresented that new customers (particularly a large Florida customer) were already committed to seek contract manufacturing from the business

g. Misrepresented that the new customers would bring volumes of new business

h. Misrepresented that loaned funds were necessary only to capture new business

i. Misrepresented that Plaintiff's equipment was necessary for new business

j. Misrepresented that basic company matters were stable, including payment of vendors, utilities, storage facilities, and payroll

45. Defendants' negligent misrepresentations and fraud proximately caused Plaintiffs' damages and injuries in a sum in excess of the minimum jurisdiction of the Court.

## VI.
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (Defendants Jennifer Bancroft and Robert E. Bancroft)

46. Plaintiffs repeat and reallege each and very allegation contained in Paragraphs 1 through 45 inclusive, as if set forth in full.

47. Plaintiffs are consumers as defined by Texas Business & Commerce Code §17.45(4).

48. Plaintiffs, relying on the above representations, and without knowledge of the Bancroft Defendants misrepresentations, omissions and failures to disclose, loaned funds, equipment and raw materials on a limited basis

49. The representations, statements and failures to disclose made by the Bancroft Defendants were false, misleading and deceptive in the following respects:

(a) The Bancroft Defendants and their entities had a large volume of new business

(b) The Bancroft Defendants only needed loans and equipment in order to meet the manufacturing requirements for the new volume of business

(c) The Bancroft Defendants misrepresented that they had the requisite knowledge and ability to acquire, handle and support the new volume of business;

(d) The Bancroft Defendants made or caused to be made directly and/or indirectly, assertions, representations and/or statements with respect to the manufacturing services that were untrue, deceptive and/or misleading;

(e) The Bancroft Defendants failed to communicate, coordinate, and implement the manufacturing operation for the new volume of business;

(f) The Bancroft Defendants failed to apply the funds and use the equipment for the intended purposes of new volume of customers;

(g) The Bancroft Defendants represented that the business opportunities had characteristics, uses and benefits in quality that it did not have;

(h) The Bancroft Defendants represented that the business opportunities and manufacturing services were of a particular grade when it was of another;

(i) The Bancroft Defendants failed to disclose information concerning the business opportunities and manufacturing services that if such information had been known to Plaintiffs at the time of the transaction Plaintiffs would not have entered into it;

(j) The Bancroft Defendants misrepresented to Plaintiffs pertinent facts relating to the business opportunities and manufacturing services;

(k) The Bancroft Defendants made untrue statements of material facts about the business opportunities and manufacturing services;

(l) The Bancroft Defendants left out material facts so that statements and representations made Plaintiffs were misleading;

(m)    The Bancroft Defendants made statements in such a way that would lead a reasonably prudent person to false conclusions about material facts regarding the business opportunities and manufacturing services;

(n)    The Bancroft Defendants failed to disclose matters that were required to be disclosed;

50.    The Bancroft Defendants engaged in an unconscionable cause of action in performance of legal services in violation of the Texas Deceptive Trade Practices Act, § 17.50(a)(3) as discussed. Defendants' conduct resulted in a gross disparity between the value received and the consideration paid for the manufacturing services.

51.    The Bancroft Defendants engaged in an unconscionable course of action as discussed above that produced damages to Plaintiffs including: loss of funds, loss of use of the equipment, deterioration and loss of raw materials; loss of product sales and Plaintiffs' profits from sale of their products; loss of customers and/or customer relationships with knowledge that material facts and information were withheld from Plaintiffs. This conduct is actionable under the Texas Deceptive Trade Practices Act §17.50(a)(3) and §17.45(5).

52.    On information and belief, the Bancroft Defendants' conduct was committed knowingly and therefore Plaintiffs are entitled to the additional damages authorized by DTPA § 17.50(b)(1).

53.    Plaintiffs have suffered damages in the form of compensatory damages, actual damages, and interest in an amount in excess of the minimum jurisdiction of the Court.

## VII.
## INTERFERENCE WITH CONTRACT

54.    Plaintiffs repeat and allege each and every allegation contained in paragraphs 1 through 53 as if each were fully set forth herein.

55.    Plaintiffs have long-standing business relationships with their valued customers that have been acquired and nurtured over many years, developing long-term relationships and product commitments. The volume of business with their customers has steadily increased.

56.    Plaintiffs had existing orders and sales that were pending orders and sales.

57.    Defendants knew of and were made aware of the existing orders and sales with its customers.

58.    Defendants willfully interfered with Plaintiffs and Plaintiffs' orders and sales and its customers.

59.    Defendants' misrepresentations and misconduct resulted in non-delivery of purchase orders from Plaintiffs' customers.

**Defendant Jennifer Bancroft and Defendant Robert E. Bancroft**

60.    Plaintiffs' products were and are being held hostage and Plaintiffs were denied access to their equipment and raw materials.

**Defendant Owner/Landlord and Defendant Property Manager**

61.    Plaintiffs' customers are not receiving their ordered products because they are being held hostage due to Landlord Defendants locking out-the Premises and not allowing Plaintiffs access to their equipment, raw materials and product.

62.    Defendants willingly interfered with Plaintiffs' orders and sales with their customers, by refusing to give Plaintiffs access to their equipment, raw materials and product.

63.    Without their product, Plaintiffs could not deliver contracted goods to their customers.

64.    Without their equipment and raw materials, Plaintiffs cannot manufacture its products, including finding another suitable manufacturing facility that can produce the products for Plaintiffs.

65. As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of the minimum jurisdiction of the Court.

## VIII.
### WRONGFUL LOCK-OUT AND UNLAWFUL POSSESSION OF PLAINTIFFS' EQUIPMENT, RAW MATERIALS AND PRODUCT (Defendant Owner/Landlord & Defendant Property Manager)

66. Plaintiffs repeat and reallege each and very allegation contained in Paragraphs 1 through 65 inclusive, as if set out herein in full.

67. On or about December 27, 2017 Defendant Property Manager, agent for the Owner/Landlord, improperly locked Plaintiffs' equipment, raw materials and product out of the Premises.

68. Pursuant to the terms of Texas Property Code 93.002, Defendants failed to provide proper and adequate notice of the lock out.

69. Pursuant to the terms of Texas Property Code Defendants failed to establish that they have a landlord lien on Plaintiffs' Property.

70. Defendant Property Manager and Defendant Owner/Landlord were advised that Plaintiffs' equipment, raw materials and product were locked in the Premises, that there was no dispute over ownership of the equipment, raw materials and product.

71. Defendant Owner/Landlord and Defendant Property Manager failed to investigate and perform even limited due diligence to confirm that ownership of the contents of the Premises.

72. Defendant Owner/Landlord and Defendant Property Manager locked-out the Premises and improperly refused Plaintiff to access her equipment, raw materials and product.

73. Even after Plaintiff advised Defendant Owner/Landlord and Defendant Property Manager that Plaintiffs owned the equipment, raw materials and product, and that both

Defendants Robert E. Bancroft and Jennifer Bancroft could and did confirm ownership of said equipment, raw materials, and product Defendant Owner/Landlord and Defendant Property Manager still refused to allow Plaintiffs access.

74. Defendant Property Manager and Defendant Owner/Landlord failed to properly and adequately prepare an inventory of the contents of the Premises.

75. Defendant Property Manager and Defendant Owner/Landlord failed to properly and adequately secure the contents of the Premises, including provisions necessary to maintain the equipment, raw materials and product.

76. On information and belief, Defendant Property Manager and Defendant Owner/Landlord failed to document the lock-out with video or a neutral witness and prepare an inventory of the contents.

77. Plaintiffs' requests for access to equipment, raw materials and products are not covered by any landlord's lien under the Texas Property Code and such requests should be immediately honored (subject to escort and prior identification of the items being removed).

78. Defendants have refused to provide access to Plaintiffs' equipment, raw materials and product.

79. As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of the minimum jurisdiction of the Court.

## IX.
## CONVERSION

80. Plaintiffs repeat and reallege each and very allegation contained in Paragraphs 1 through 79 inclusive, as if set out herein in full.

81. The Plaintiffs owned equipment, raw materials and product that was held at 1075 South Belt Line Road, Coppell, Texas 75019.

82.     The Landlord Defendants were contacted and advised that property at the 1075 South Belt Line Road premises did not belong to their tenant. Further, the Landlord Defendant were put on notice that Plaintiffs had existing orders and sales pending that needed to be filled using the equipment, raw materials and products at the 1075 South Belt Line Road premises.

83.     Plaintiff owned, had legal possession of, or was entitled to possession of the aforesaid equipment, raw materials and products.

84.     The Landlord Defendants, unlawfully and without authorization, assumed and exercised dominion and control over the said property to the exclusion of, or inconsistent with, the Plaintiffs' rights.

85.     Plaintiffs made a demand for the property.

86.     Landlord Defendants refused to provide the property to Plaintiffs.

87.     As a result of the Landlord Defendants' actions, Plaintiffs suffered damages in excess of the minimum jurisdiction of the Court.

## X.
## CONDITIONS PRECEDENT

88.     All conditions precedent have been preformed or have occurred as required by TEX. R. CIV. P. 54.

## XI.
## ATTORNEY'S FEES

89.     As a result of the acts and conduct of the Defendants and losses incurred by Plaintiffs, Plaintiffs have been forced to retain attorneys to protect their interests and to prosecute their claims. Presentment has been made. Pursuant to the Texas Civil Practice and Remedies Code § 38.001 and the Texas Property Code, Plaintiffs are entitled to recover from Defendants, in addition to any damages, a sum for reasonable attorneys' fees, for such attorney's services in

the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals required.

## XI.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray for judgment against Defendant as follows:

a.  a sum in excess of the minimum jurisdiction of the Court;

b.  reasonable attorney's fees;

c.  damages for unconscionable conduct;

d.  pre-judgment and post-judgment interest at the highest rates allowed by law;

e   costs of suit; and

f.  such other and further relief, both special and general, legal and equitable to which Plaintiff may be justly entitled.

Respectfully submitted,

THE FEIN LAW FIRM, P.C.

By: _____
ERIC D. FEIN
State Bar No. 06879020
efein@feinlawfirm.com
Vickie S. Brandt
State Bar No. 24031878
vbrandt@feinlawfirm.com
15455 N. Dallas Parkway, Suite 1225
Addison, Texas 75001
Telephone: (214) 522-9596
Facsimile: (214) 522-9599
*ATTORNEYS FOR PLAINTIFFS*