UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | Chapter 7 |
| Leio Corporation, | § | |
| | § | Case No. 17-45187-mxm7 |
| Debtor. | § | |
| | § | |

**EXPEDITED MOTION TO ENFORCE LIFT STAY ORDERS
AND FOR SANCTIONS**
[Related to Docket Nos. 35 and 50]

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

Colonial Funding Network, Inc., as servicing agent for Hunter Caroline Holding, LLC ("Colonial"), the first-lien secured creditor of Leio Corporation (the "Debtor"), files this motion to enforce the *Order On Motion For Relief From The Automatic Stay* [Docket No. 35] and the *Amended Order On Motion For Relief From The Automatic Stay* [Docket No. 50] (together, the "Lift Stay Orders") entered in the above-captioned chapter 7 case (the "Bankruptcy Case") and for sanctions against Helga Arminak and Arminak Solutions, LLC (together, "Arminak") for violating the Lift Stay Orders and respectively states in support:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and this Court's inherent power to enforce its own orders.

**BACKGROUND**

**A. Colonial is a First Lien Secured Creditor of the Debtor**

2. The Debtor and Colonial are parties to that certain Revenue Based Factoring Agreement dated September 21, 2017 and the related Security Agreement dated (together, the "RBF Agreement") a copy of which is attached hereto as **Exhibit A**.    Pursuant to the RBF

1

Agreement, the Debtor granted Colonial a security interest in all its property including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, and investment property.

3.  Colonial's security interest is perfected with a UCC-1 financing statement a copy of which is attached hereto as **Exhibit B**.  The Colonial UCC-1 financing statement was filed on October 25, 2016.

4.  On or about October 24, 2017, Arminak made an investment in the Debtor pursuant to that certain Binding Confidential Term Sheet, dated October 24, 2017 (the "Arminak Binding Term Sheet"), a copy of which is attached hereto as **Exhibit C**.  Pursuant to the Arminak Binding Term Sheet, Arminak loaned the Debtor $250,000 and the Debtor granted Arminak a security interest in "all assets" of the Debtor.  The Arminak Binding Term Sheet provides that the security interest is senior to all existing and future indebtedness of the Debtor "with the exception of the [Debtor's] pre-exiting loan with Hunter Caroline."  Hunter Caroline is a reference to the Colonial debt.

5.  Arminak's security interest is perfected with a UCC-1 financing statement a copy of which is attached hereto as **Exhibit D**.  The Arminak UCC-1 financing statement was filed on November 13, 2017.

**B. Aminak's Lift Stay Motion and Improper Removal of Property**

6.  On December 29, 2017, (the "Petition Date") the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code, initiating the above-captioned proceeding (the "Bankruptcy Case").  Areya Holder (the "Trustee") was appointed as the Trustee in the Bankruptcy Case.

7.      As of the Petition Date, the Debtor occupied a facility at 1075 S. Beltline Road, Coppell, Texas (the "Leased Premises") in connection with a Standard Industrial Real Estate Lease dated February 21, 2013 (the "Lease") with Majestic Park West Partners, L.P.; NM Majestic Holdings, LLC; and Majestic Realty Co. (collectively, the "Landlord Parties").

8.      On January 12, 2018, Arminak filed their *Unopposed Emergency Motion for Relief From Stay* [Docket No. 13] (the "Arminak Lift Stay Motion"). Pursuant to the Arminak Lift Stay Motion, Arminak represented to the Court that Arminak provided the Debtors with certain manufacturing equipment and inventory for a manufacturing operation located at the Leased Premises that was not the Debtor's property. Arminak listed this property on Exhibit A to the Arminak Lift Stay Motion (the "Arminak Property").

9.      On February 2, 2018, the Court entered an amended order on the Arminak Lift Stay Motion that authorized Arminak to remove only the Arminak Property.

10.     On information and belief, Arminak entered the Leased Premises on or about January 31 and February 1, 2018. According to Jennifer Bancroft, the Chief Executive Officer of the Debtor, Arminak removed property from the Leased Premises that exceeded the Arminak Property and included property owned by the Debtor that Colonial has a first lien on. Ms. Bancroft prepared the reports attached hereto as **Exhibit E** that detail the property that Arminak improperly removed from the Leased Premises.

11.     The Property that was improperly removed from the Leased Premises that Colonial has a first lien on include the following (the "Missing Property"):

- 150 Gallon, Jacketed, Double Motion Kettle with Mixers and Sweeps
- Kalix Automated Tube Filler and Sealer
- Hitachi Lot Coder
- Silverson In-Line Homogenizer
- 45 gallon SLS mixing tank
- two 20 gallon mixing kettles

3

- Commercial electric breaker
- *Makita 7 inch SJS II Angle Grinder
- Pneumatic pump
- 18 volt lithium battery reciprocating saw kit
- Skin Analyzers (7 units)
- Vibraderm
- Skin Analysis Machine
- Bath Bomb Finished Goods

12. According to the Debtor's representative Jennifer Bancroft and Rob Bancroft, these items that Arminak took were the most valuable items in the Leased Premises and the sale of just some of these items would likely be sufficient to repay Colonial in full on account of its first lien secured claim.

C.  **Colonial's Requests to Arminak for Inventory and Turnover of Property**

13. On January 16, 2018, the Landlord Parties filed its *Expedited Motion of Majestic Park West Partners, L.P.; NM Majestic Holdings, LLC; and Majestic Realty Co. For Approval of Procedures Governing Distribution of Abandoned Property* [Docket No. 23] (the "Distribution Motion"). On February 8, 2018, the Court entered the Distribution Order.

14. Soon after entry of the Distribution Order, Colonial, through undersigned counsel, contacted Arminak's counsel Mr. Fein to notify him that Colonial had a first lien security interest in the personal property owned by the Debtor and to inform Mr. Fein that Jennifer Bancroft had identified specific property that was wrongfully removed by Arminak that was not subject to the Lift Stay Orders. Undersigned counsel requested that Arminak return this Missing Property to the Leased Premises prior to Colonial entering the Leased Premises in connection with the Distribution Motion to avoid additional expense by Colonial in retrieving its property. Mr. Fein indicated that Arminak would prepare an inventory of the property Arminak removed.

15. On February 12, 2018, Mr. Fein emailed undersigned counsel to notify him that Arminak claims an ownership of certain raw materials and that these raw materials are not subject

4

to Colonial's first lien   Mr. Fein also stated that "Once there is an opportunity to determine the extent of the property subject to your client's lien, I will contact you to further our discussions."

16. On February 13 2018, undersigned counsel once again asked Mr. Fein the status of the return of the Missing Property wrongfully taken by his client.  Mr. Fein stated that he is working on arrangements for this.

17. In accordance with the Distribution Order, Colonial, through its agent, accessed the Leased Premises on February 14 and 15, 2018 to recover property that it has a lien on.

18. On February 16, 2018 undersigned counsel had a call with Mr. Fein.  Again, undersigned counsel requested that Arminak return the Missing Property.  Mr. Fein said he would follow up with Arminak regarding the Missing Property and provide a list of the property actually removed by Arminak; however, Mr. Fein has not provided this inventory.  Mr. Fein asked whether Colonial removed any raw materials from the Leased Premises.

19. On February 19, 2018, undersigned counsel confirmed that Colonial did not remove any raw materials and emailed Mr. Fein back to confirm.   Undersigned counsel also provided Mr. Fein a copy of the report prepared by Jenifer Bancroft attached hereto as Exhibit E and asked for a status of the return of the Missing Property identified therein.

20. On February 20, 2018, Mr. Fein emailed undersigned counsel that he would get back to undersigned counsel the next day regarding the Missing Property.   Mr. Fein did not follow up the next day.

21. On February 21, 2018, undersigned counsel emailed Mr. Fein to follow up on the Missing Property.  Mr. Fein responded that he is planning on discussing with his client tomorrow.

22. Colonial accessed the Leased Premises again on February 22 and 23, 2018 in accordance with the Distribution Order.   Arminak did not return the Missing Property to the

Leased Premises. Because Arminak had already removed the most valuable property, Colonial was left with undesirable items of negligible value and items that are difficult to move and take up more storage space thereby increasing Colonial's liquidation and storage costs.

23. On February 22, 2018, undersigned counsel and Mr. Fein had a phone call. Undersigned counsel raised the issue that Colonial has a first lien on the raw materials and the finished materials that Arminak removed from the Leased Premises. Mr. Fein responded that he will provide proof of ownership of the raw materials.

24. On February 27, 2018, undersigned counsel emailed Mr. Fein to ask about the proof of ownership of the raw materials and also asked about the removal of the bath bomb press. Undersigned counsel informed Mr. Fein that Colonial is finalizing a supplemental list of the Missing Property based upon Colonial's inventory and that Colonial will be sending a proposal to resolve the dispute. Michael Fox, Arminak's other counsel, responded and stated that each side should prepare a list of the property removed from the Leased Premises.

25. On March 21, 2018, undersigned counsel sent Mr. Fein and Mr. Fox a list of the Missing Property and a proposal to resolve Arminak's failure to return the Missing Property.

26. On April 1, 2018, Ms. Falkowitz, Colonial's in-house counsel, emailed Mr. Fox to follow up on the proposal and to notify him that Colonial will be filing a motion with the Bankruptcy Court if we did not hear back from him the next day.

27. On April 2, 2018, Mr. Fox responded that the list of Missing Property does not describe the condition the property. By another email the same day, Mr. Fox stated: "We will take picture [sic] of the few items we have. They are all damaged. Give me an address and we will ship them to your client. Gladly."

28. On April 3, 2018, undersigned counsel emailed Mr. Fox the shipping address. On the same day, Mr. Fox emailed undersigned counsel and stated: "We are working on this. But where there is a difference is what the Bancroft's told you we have. We are 'checking' this and will send you our list (hopefully by end of this week)." Colonial has not received a list from Arminak of the property or any indication that Arminak has shipped any of the Missing Property back to Colonial.

29. On April 11, 2018, Leaf Capital Corporation, LLC ("Leaf") filed its Emergency Motion for Contempt and Order to Show Cause [Docket No. 69] (the "Leaf Contempt Motion"). In the Contempt Motion, Leaf describes a similar situation that Colonial has experienced with Arminak's counsel – a series of delays in addressing the wrongful removal of property from the Leased Premises.

**RELIEF REQUESTED**

30. It is evident that Arminak does not intend to act in good faith to address the wrongful removal of the Missing Property and therefore Colonial requests relief from this Court.

31. By this Motion, Colonial seeks entry of an order to enforce the terms of the Lift Stay Order by awarding Colonial sanctions against Arminak to compensate Colonial for the damage caused by Arminak's violation of the Lift Stay Orders and its wrongful removal of the Debtor's property which Colonial has a first lien on.

## BASIS FOR REQUESTED RELIEF

32. "Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt." *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

33. Section 105(a) of the Bankruptcy Code allows a court to order relief that is "demonstrably necessary to preserve a right elsewhere provided in the [Bankruptcy Code]" provided that such relief is consistent with the Bankruptcy Code's other substantive rights, policy concerns, and distribution procedure. The Fifth Circuit has held "that a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105." *Placid Refining Cor. v. Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997). The First Circuit has approved the impositions of sanctions against litigants for bad faith conduct under bankruptcy court's inherent authority. *Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328, 332 (5th Cir. 2008) ("It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct.").

34. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Goldman v. Bankton Fin. Corp. (In re Skyport Glob. Commc'ns, Inc.)*, 661 F. App'x 835, 840–41 (5th Cir. 2016) (*quoting Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)) (internal quotation omitted). Here, Arminak has violated to the Lift Stay Orders by removing property owned by the Debtor instead of just removing the propety permitted to be removed under the Lift Stay Orders. According to the Debtor's representatives, Colonial could have recovered the full amount of its claim from some of the more valuable and marketable items

that Arminak removed, which also would have been significantly easier to move and store. Instead, Colonial had to expend substantial time and effort to recover assets from the Leased Premises that have proven to be difficult to sell and will realize a value that is substantially less than the amount of Colonial's claim.

## EXPEDITED RELIEF REQUESTED

35. On April 11, 2018, Leaf filed the Leave Contempt Motion. In the Leaf Contempt Motion, Leaf describes a similar situation that Colonial has experienced with Arminak – a series of unfulfilled promises related to the return of property removed from the Leased Premises. Mr. Fein, Arminak's counsel, has a motion to withdraw [ECF 65] (the "Fein Motion to Withdraw") pending that is scheduled to be head on April 26, 2018 at 1:30 p.m. (CT). Colonial requests expedited consideration of this Motion to it can be heard at the same time as the Fein Motion to Withdraw so this matter can be resolved prior to Mr. Fein's withdraw from this bankruptcy case.

## CONCLUSION

36. Colonial respectfully requests that this Court grant the relief requested in this Motion by entering an order awarding Colonial sanctions to compensate Colonial for Arminak wrongfully removing the Debtor's property in violation of the Lift Stay Orders, and grant Colonial and other parties in interest other relief that is just and proper.

9

DATED: April 16, 2018

                                                                             Respectfully submitted,

**DIAMOND MCCARTHY, LLP**

*/s/ Charles M. Rubio*
Charles M. Rubio
State Bar No. 24083768
Diamond McCarthy, LLP
909 Fannin Street, 37th Floor
Two Houston Center
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5195

*Counsel for Colonial Funding Network, Inc., as servicing agent for Hunter Caroline Holding, LLC*

Certificate of Conference

    As set forth in paragraphs 14 to 28 in this Motion, undersigned counsel has conferred with counsel to Arminak to resolve the issues raised in this Motion. As of this filing, no resolution has been reached.

                                                     */s/ Charles M. Rubio*