Case 17-45187-mxm7 Doc 13 Filed 01/12/19 Entered 01/12/19 15:06:11 Page 22 of 48
Case 17-45187-mxm7 Doc 71-3 Filed 04/16/18 Entered 04/16/18 19:46:40 Page 1 of 5

Exhibit C

DRAFT
10/24/17

## CONFIDENTIAL BINDING TERM SHEET

## LEIO CORPORATION

October 24, 2017

This Confidential Binding Term Sheet summarizes the principal terms of the investment and financing by Helga D. Arminak ("**Investor**") in LEIO Corporation, a Texas corporation (the "**Company**" or "**LEIO**"). This Term Sheet is intended to create binding legal and contractual obligations of the parties hereto with respect to matters set forth herein, until such time as definitive documentation can be executed that will supersede this Term Sheet. Upon the breach by a party of its obligations hereunder, the injured party shall have such rights and remedies with respect thereto as are available to it under applicable law. This Term Sheet shall be governed in all respects by the laws of the State of Texas.

| | |
|---|---|
| *Current Capitalization:* | Authorized Shares: 10,000,000 shares of common stock, no par value

The Company represents that Exhibit A hereto sets forth the number of shares of common stock that each stockholder of the Company owns, which constitutes all of the issued and outstanding stock of the Company. The Company represents that there are no agreements, options, warrants or other rights outstanding granting any person the right to purchase shares of the Company. |
| *Issuance:* | Investor shall receive on the date of this Term Sheet 20% of the outstanding stock of the Company. |
| *Purchase Price:* | Investor will receive 20% of the outstanding stock of the Company to incentivize Investor to develop business opportunities and introduction of clientele that creates significant incremental value for LEIO.

Investor and the Company agree that the Company currently has nominal value and the value of the 20% of the Company issued to Investor has nominal value. |
| *Board of Directors:* | Board shall be fixed at 3 members and Investor shall have the right to appoint 1 director (the "**Investor Designee**").

For so long as the Loan (as defined below) remains outstanding, the Board shall not undertake any of the following "Major Decisions" without the consent of the Investor Designee:

- issuance of shares of common stock;
- changes in authorized number of capital stock;
- changes in capital structure or organizational structure;
- incurrence of new debt or prepayment of any existing debt;
- redemption or repurchase of any shares of capital stock;
- declare or pay any dividend or distribution;
- change the number of directors; |

4354373-2
4356725-4

DRAFT
10/24/17

|  |  |
|---|---|
|  | - liquidate, dissolve, or undertake a change in control;<br>- declare bankruptcy;<br>- change line of business or undertake a new product line;<br>- purchase or sell assets in excess of $50,000;<br>- entry into distribution or reseller agreements; and<br>- make investments in excess of $50,000.<br><br>Once the Loan is repaid in full, the Board shall not undertake any of the following "Major Decisions" without the consent of the Investor Designee:<br>- changes in capital structure or organizational structure that will adversely effect the Investor;<br>- change line of business; or<br>- liquidate, dissolve, or declare bankruptcy. |
| *Right of First Refusal / Participation Rights:* | In addition to the rights described under "Board of Directors", should LEIO waive its right to repurchase securities to be sold by any stockholder of the Company, the Investor shall have a right of first refusal to purchase securities to be sold by said stockholder of the Company at the same price offered to LEIO.<br><br>Investor will also have the right to participate on a pro rata basis in subsequent issuances of equity securities, including securities convertible into equity. |
| *Senior Secured Promissory Note:* | Investor has loaned $250,000 to the Company, in cash and through the payment of Company bills (collectively, the "Loan") and loaned $924,000 worth of materials for use by the Company, which materials are listed on Exhibit B hereto (the "Leased Equipment"). The Company shall pay Investor for use of the Leased Equipment on terms to be agreed upon. All Leased Equipment shall continue to be owned exclusively by Investor. |
| *Interest Rate:* | The Loan shall bear interest at 9.9% per annum, superseding prior agreements at higher interest rates. Interest shall accrue and be payable on the maturity date or upon prepayment. Any subsequent loans provided by Investor, in her sole discretion, shall bear interest at 9.9% and interest shall accrue and be payable on the maturity date or upon prepayment. |
| *Maturity Date:* | December 31, 2019, unless earlier paid or accelerated. |
| *Collateral & Guarantees:* | The indebtedness evidenced by the Loan shall be secured by all assets of the Company equivalent to the outstanding principal plus accrued interest with a priority lien, senior to all existing and future indebtedness of the Company with the exception of the Company's pre-existing loan with Hunter Caroline.<br><br>The Company consents to Investor filing a UCC-1 financing statement on the date hereof to perfect her security interest established herein. |
| *Mandatory* | The Company and Investor will negotiate in good faith to define a mutually |

4354373-2
4356725-4

DRAFT
10/24/17

| | |
|---|---|
| *Prepayment:* | agreeable loan repayment schedule. |
| *Optional Prepayment:* | The Loan may be prepaid at the option of the Company in whole or in part at par plus accrued and unpaid interest to the date of prepayment without penalty or premium. |
| *Distributions:* | All Company cash not required as a reasonable reserve for capital replacements, loan repayments, payment to third party creditors or other expenses of the Company, as reasonably determined by LEIO Management, shall be distributed pro rata to stockholders. |
| *Conversion:* | LEIO will (as part of the transactions set forth herein or otherwise) convert its entity form to a limited liability company, so long as Investor's ownership in the converted form is the same proportion immediately subsequent to such conversion as it was immediately prior to such conversion and Investor will not be adversely effected. |
| *Drag Along Rights:* | Holders of a majority of the Common Stock may cause all Common Stock issued in connection herewith to participate, on a *pari passu* basis with respect to price per share of Common Stock and general terms thereof, in any sale of all or substantially all of the shares of Common Stock in LEIO to a third party in an arm's length transaction. |
| *Financial Structure on Sale of Goods:* | Investor shall receive, in her capacity as an independent contractor, a 20% commission on gross profit of all sales of LEIO owned brands to customers originated by Investor.<br><br>When LEIO participates jointly with an Arminak owned/controlled entity to secure and deliver products and services, the parties will share equally in the profits unless otherwise agreed to by the parties. In this structure, Arminak earns upside for the profit earned by the Arminak entity (-ies) in addition to her pro rata share of LEIO's profit. |

DRAFT
10/24/17

| | |
|---|---|
| *Indemnification:* | The Company and the existing stockholders hereby agree to indemnify and hold harmless (to the fullest extent permitted by applicable law) the Investor and its affiliates, subsidiaries, officers, directors, employees, agents, controlling persons and successors and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any kind (including reasonable attorneys' fees, costs and expenses) in connection with any liabilities, losses, damages, actions, suits, judgments or investigative or administrative proceedings ("**Liabilities**") that may be suffered or incurred by any such indemnified person in connection with Investor's investment in the Company, the Loan, this Term Sheet, any actions taken by LEIO management or the Board prior to the date hereof, including without limitation, relating to the Company's S-corporation status, and the exercise by Investor of any rights, remedies or privileges hereunder or thereunder, other than Liabilities arising as a result of the Lender's bad faith, gross negligence, willful misconduct or direct participation as a member of the Board of Directors. |
| *Non-Circumvent* | The Company agrees to keep confidential the names of any contacts introduced or revealed by Investor, and that the Company's associates, joint ventures, partnerships, divisions, subsidiaries, employees, agents, heirs, assigns, designees, or consultants will not contact, deal with, negotiate or participate in any transactions with any of the contacts without the prior written consent of the Investor. Such confidentiality will include any names, addresses, telephone, telex, facsimile numbers, formulations, distribution models, marketing plans, product concepts and/or other pertinent information disclosed or revealed to the Company.<br><br>The Company agrees not to disclose, reveal or make use of any information during discussion or observation regarding methods, concepts, ideas, product/services, or proposed new products or services, nor to do business with any of the revealed contacts without the written consent of the Investor. The parties agree to not disclose any intellectual property owned by Investor. Intellectual property may include formulations, ingredients, device technology or usage, and or any material relating to the creation or distribution of products.<br><br>In case of circumvention, the Company agrees and guarantees that they will pay a legal monetary penalty that is equal to the commission or income the Investor should have realized in such transactions, by the person(s) engaged on the circumvention for each occurrence. If Investor commences legal proceedings to interpret or enforce the terms of this Term Sheet, the Investor will be entitled to recover court costs and reasonable attorney fees. |
| *Other Terms:* | The definitive loan documents will contain representations and warranties, covenants, events of default and remedies, indemnities and conditions, in each case customary and reasonable for transactions of this type. Events of default shall be customary and appropriate and acceptable to the Investor (with cure and grace periods and exceptions to be mutually agreed), including without limitation failure to make payments when due, defaults under other material |

4354373-2
4356725-4

DRAFT
10/24/17

|  | |
|---|---|
|  | agreements or instruments of indebtedness, noncompliance with covenants, breaches of representations and warranties, bankruptcy, judgments in excess of specified amounts, invalidity of guaranties, impairment of security interests in collateral, and "changes of control" (to be defined in a mutually agreed upon manner). |
| *Information Rights:* | Investor shall have reasonable access to information and inspection rights and receive monthly reports on receipts and disbursements from the Company. |
| *Definitive Documentation:* | The parties have engaged in negotiations and reached agreement in principle to undertake the matters set forth herein and will use their best efforts to complete negotiations and execute definitive documentation containing mutually agreeable terms and conditions consistent with this Term Sheet. To the extent definitive documentation is not entered into by December 31, 2017, Investor shall have the right to demand payment in full plus interest of the Loan. |
| *No Other Agreements* | The parties agree that as of this date there are no oral or written representations, agreements or understandings concerning the subject matter of this Term Sheet or the transactions contemplated herein. No person or entity other than the parties to this Term Sheet shall have any rights under this Term Sheet. |

By signing in the space provided below, each party hereto represents that the foregoing accurately reflects its understanding of the matters set forth herein.

By: _____
Helga D. Arsinak

LEIO CORPORATION

By: _____
Name: Jennifer R. Barnum
Title: CEO

4354373-2
4356725-4